#26933-a-LSW

**2015 S.D. 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CITIBANK, N.A.,                                    Appellant,

    v.

SOUTH DAKOTA
DEPARTMENT OF REVENUE,                             Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SUSAN M. SABERS
Judge

* * * *

THOMAS J. WELK
JASON R. SUTTON of
Boyce Law Firm, L.L.P
Sioux Falls, South Dakota

DAVID L. ZIMBECK
Sioux Falls, South Dakota                          Attorneys for appellant.


ANDREW L. FERGEL
STACY R. HEGGE of
South Dakota Department of Revenue
Pierre, South Dakota                               Attorneys for appellee.

* * * *

ARGUED JANUARY 14, 2015

OPINION FILED **07/29/15**

#26933

WILBUR, Justice

[¶1.]        Citibank, Inc. ("Citibank") filed a tax refund claim with the South Dakota Department of Revenue in 2012 requesting a return of a portion of bank franchise taxes paid for the tax years 1999, 2000, 2001, and 2002.  The Department of Revenue denied the tax refund claim.  Citibank requested a hearing with the Office of Hearing Examiners ("OHE").  OHE found that the refund claim was time-barred by the three-year statute of limitations contained in SDCL 10-59-19.  Consequently, OHE dismissed the case for lack of jurisdiction.  The circuit court affirmed OHE.  Citibank appeals.  We affirm.

## Background

[¶2.]        Citibank[1] timely filed United States federal income tax returns with the Internal Revenue Service (the "IRS") on behalf of itself and its consolidated group for each of the following taxable years: 1999, 2000, 2001, and 2002 (the "Federal Tax Returns").  Citibank also timely filed bank franchise tax returns with the South Dakota Department of Revenue (the "Department") for the same years.  The IRS subsequently conducted an audit of the Federal Tax Returns.  During the course of the audit, Citibank requested a reduction in its taxable income for the taxable years 1999 and 2000.  Citibank made this request because it changed its

1.        At all relevant times, Citigroup, Inc. ("Citigroup") was the common parent of Citibank and Citibank (of South Dakota) National Association ("CBSD").  On July 1, 2011, CBSD merged with and into Citibank.  Citibank brought the underlying claim as a successor in interest to CBSD.  For purposes of this opinion, we refer to Citigroup, CBSD, and Citibank collectively as "Citibank."

method of accounting beginning with the 2001 tax year.[2] Citibank's application of the new accounting method resulted in the double reporting of interchange fees that were previously reported on its 1999 and 2000 tax returns. The IRS and Citibank agreed to extend the federal statutory period of limitations for auditing the Federal Tax Returns to June 30, 2012, for assessments, and December 31, 2012, for claims for refunds. As part of a settlement with Citibank, the IRS agreed in 2012 to reduce Citibank's taxable income for the taxable years 1999, 2000, 2001, and 2002 by the respective amounts of $789,426,457; $120,873,512; $10,357,119; and $14,054,954.

[¶3.] The parties to this action stipulated that the State of South Dakota did not have "personal knowledge" of the Federal Tax Returns until March 2012. On March 16, 2012, and within 60 days of the IRS's final decision, Citibank filed amended bank franchise tax returns with the Department reflecting its reduced taxable income for tax years 1999 and 2000 and requested a refund of the bank franchise taxes on returns that were due and paid in 2000, 2001, 2002, and 2003, for taxable years 1999 through 2002.[3] The refund request filed with the Department totaled $29,945,132, excluding interest.[4] The circuit court noted that

---

2. For the taxable years 1999 and 2000, Citibank accounted for interchange fees using the "Immediate Recognition Method." Beginning with the 2001 taxable year, Citibank accounted for interchange fees using the "Deferral Method."

3. In addition to not notifying the Department of the audit until March 2012, Citibank did not notify the State that it had obtained extensions from the IRS for the Federal Tax Returns because of the audit until September 24, 2012, even though Citibank collaborated with the IRS regarding the extensions within the three-year limitation period under SDCL 10-59-19.

4. On March 16, 2012, Citibank filed an amended franchise tax return. The tax return requested a refund of $29,002,648 for the taxable year 1999; $897,255

(continued . . .)

at the time of its decision, the approximate total accrued interest on the refund claim was $21,500,000.

[¶4.]     The Department denied Citibank's request for a refund of bank franchise taxes on April 9, 2012.  The Department concluded that the refund claim was filed after the three-year statute of limitations had expired pursuant to SDCL 10-59-19.  Citibank requested an administrative hearing before OHE, contending that it had timely filed its refund claim in compliance with ARSD 64:26:02:06.  Citibank and the Department stipulated to all material facts and evidence and filed cross motions for summary judgment.  The Department also filed a motion to dismiss for lack of jurisdiction.

[¶5.]     On March 15, 2013, OHE granted the Department's motion to dismiss for lack of jurisdiction.  OHE rejected Citibank's argument that ARSD 64:26:02:06 allowed it to file a refund claim after the expiration of the three-year statute of limitations.  OHE concluded that it did "not have jurisdiction" because "Citibank failed to file its request for refund within the three year limitations period contained in SDCL 10-59-19."  Citibank appealed to the circuit court.  The circuit court affirmed OHE's decision on November 22, 2013.  Citibank raises the following issues for our review:

> 1.     Whether OHE correctly granted the Department's motion to dismiss for lack of jurisdiction because Citibank failed to comply with procedural requirements in SDCL chapter 10-59 when filing its tax refund request.

---

(. . . continued)
    for the taxable year 2000; $25,544 for the taxable year 2001; and $19,685 for the taxable year 2002.

2.     Whether the circuit court erred as a matter of law in rejecting Citibank's equitable tolling argument.

3.     Whether the circuit court erred as a matter of law in affirming the denial of Citibank's motion for summary judgment.

## Analysis

[¶6.]    **1.    Whether OHE correctly granted the Department's motion to dismiss for lack of jurisdiction because Citibank failed to comply with procedural requirements in SDCL chapter 10-59 when filing its tax refund request.**

[¶7.]    Citibank and the Department stipulated to all materials facts; therefore, our review is limited to "whether the circuit court properly interpreted and applied the law." *See Rushmore Shadows, LLC v. Pennington Cnty. Bd. of Equalization*, 2013 S.D. 73, ¶ 7, 838 N.W.2d 814, 816. "The interpretation and application of a tax statute is a question of law that we review de novo." *Id.* "Statutes that 'impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body.'" *Id.* (quoting *Butler Mach. Co. v. S.D. Dep't of Revenue*, 2002 S.D. 134, ¶ 6, 653 N.W.2d 757, 759).

[¶8.]    But we have consistently required strict compliance with statutes of limitation. *Jorgensen Farms, Inc. v. Country Pride Corp.*, 2012 S.D. 78, ¶ 30, 824 N.W.2d 410, 419 (quoting *Murray v. Mansheim*, 2010 S.D. 18, ¶ 21, 779 N.W.2d 379, 389); *see also Dakota Truck Underwriters v. S.D. Subsequent Injury Fund*, 2004 S.D. 120, ¶ 17, 689 N.W.2d 196, 201 ("Traditionally, compliance with statutes of limitations is strictly required and doctrines of substantial compliance or equitable tolling are not invoked to alleviate a claimant from a loss of his right to proceed with a claim."). "[S]tatutes of limitation ensure a 'speedy and fair adjudication of

the rights of the parties.'" *Murray*, 2010 S.D. 18, ¶ 21, 779 N.W.2d at 389 (quoting *Moore v. Michelin Tire Co., Inc.*, 1999 S.D. 152, ¶ 25, 603 N.W.2d 513, 521). "In most cases, this important principle underlining the statute of limitations is appropriately advanced by refusing to judicially modify the harsh effect imposed by a statute of limitations." *Dakota Truck Underwriters*, 2004 S.D. 120, ¶ 18, 689 N.W.2d at 201. "[T]he United States Supreme Court has recognized, and this Court has embraced, the need to protect the government's strong interest in financial stability and the State's ability to engage in sound fiscal planning as the strong underlying justification for limitations periods for tax refunds." *Ernst & Young v. S.D. Dep't of Revenue*, 2004 S.D. 122, ¶ 17, 689 N.W.2d 449, 454 (quoting *Pourier v. S.D. Dep't of Revenue* (*Pourier I*), 2003 S.D. 21, ¶ 38, 658 N.W.2d 395, 407) (internal quotation marks omitted); *see also McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 44-45, 110 S. Ct. 2238, 2254-55, 110 L. Ed. 2d 17 (1990).

[¶9.]		The present case is about the relationship between South Dakota bank franchise taxes and the three-year statute of limitations imposed under SDCL 10-59-19. It is undisputed that Citibank filed for a refund of bank franchise taxes with the Department after the three-year statute of limitations expired. SDCL chapter 10-43 governs the procedure for South Dakota's bank franchise taxes. SDCL 10-43-2.1 provides, "An annual tax is hereby imposed upon every national banking corporation . . . doing business within this state, according to or measured by its net income[.]" "Net income, in the case of a financial institution, is taxable income as defined in the Internal Revenue Code[.]" SDCL 10-43-10.1. "Each taxpayer shall file the final return for the tax year within fifteen days after the taxpayer's federal

income tax return is due." SDCL 10-43-30. When a taxpayer overpays the bank franchise tax, "the excess shall be refunded with interest after sixty days from the date of payment at six percent per year pursuant to the procedure established by the secretary of revenue[.]" SDCL 10-43-55.

[¶10.]    To successfully claim a refund of bank franchise taxes, a taxpayer must comply with the provisions of SDCL chapter 10-59: "The provisions of this chapter may only apply to proceedings commenced under this chapter concerning the taxes, the fees, the surcharges, or the persons subject to the taxes, fees, or surcharges imposed by . . . [*chapter*] *10-43*." SDCL 10-59-1 (emphasis added). SDCL 10-59-17 provides, "No court has jurisdiction of a suit to recover such taxes, penalty, or interest unless the taxpayer seeking the recovery of tax complies with the provisions of [SDCL chapter 10-59]." SDCL 10-59-19 establishes a three-year statute of limitations for tax refund claims:

> A taxpayer seeking recovery of an allegedly overpaid tax, penalty, or interest shall file a claim for recovery with the secretary, within three years from the date the tax, penalty, or interest was paid or within three years from the date the return was due, whichever date is earlier. *A claim for recovery not filed within three years of the date the tax was paid or within three years of the date the return was due, whichever date is earlier, is barred.*

(Emphasis added.) OHE concluded and the circuit court affirmed that the three-year statute of limitations imposed by SDCL 10-59-19 barred Citibank's refund claim.

### A. Timeliness of Refund Claim

[¶11.]    The principal assertion by Citibank is that the amended bank franchise tax return was timely filed in March 2012. Citibank contends that its

"prompt Refund Claim filed within sixty days of receiving an adjustment to its federal taxable income was timely under the South Dakota statutes and regulations governing refunds of excess bank franchise taxes." Citibank relies predominately on ARSD 64:26:02:06 to support this argument. The South Dakota Legislature authorized the Secretary of the Department to promulgate rules regarding the bank franchise tax:

> The provisions of this chapter shall be administered by the secretary of revenue and the secretary may promulgate rules pursuant to chapter 1-26 concerning:
>
> > (1) The procedure for filing tax returns and payment of the tax;
> >
> > (2) The type of accounting to be used;
> >
> > (3) The definition and deductibility of net federal income taxes; and
> >
> > (4) Determining the application of the tax and exemptions.

SDCL 10-43-42.1. "If the amount of the tax, as determined by the secretary of revenue, is less than the amount paid, the excess shall be refunded with interest after sixty days from the date of payment at six percent per year pursuant to the procedure established by the secretary of revenue by rule promulgated pursuant to chapter 1-26." SDCL 10-43-55. Pursuant to rule-making authority granted by the Legislature in SDCL 10-43-42.1 and SDCL 10-43-55, the Secretary promulgated ARSD 64:26:02:06. This regulation addresses the procedure for filing a tax refund claim when there has been a subsequent decrease in net income or taxable income:

> When the taxpayer has filed a return with the department for the tax year and a subsequent *decrease* occurs in the taxpayer's net income or taxable income for that tax year, whether because of audit and adjustment by the United States or otherwise, the taxpayer may file a supplementary return with the department for the tax year in which the decrease occurred. A

> supplementary return need not be filed if the decrease is the result of an adjustment in the original return by the department.

ARSD 64:26:02:06 (emphasis added). Citibank contends that "ARSD 64:26:02:06 permits a taxpayer to seek a refund of bank franchise taxes . . . after an IRS adjustment to federal taxable income irrespective of the timing of the federal adjustment for good reason."

[¶12.] In order to resolve the issue of whether the amended bank franchise tax return was timely under the laws and regulations of this State, we must engage in statutory interpretation. Our function in interpreting administrative rules "has long been clear." *Westmed Rehab, Inc. v. Dep't of Soc. Servs.*, 2004 S.D. 104, ¶ 8, 687 N.W.2d 516, 518. "Administrative regulations are subject to the same rules of construction as are statutes. When regulatory language is clear, certain and unambiguous, our function is confined to declaring its meaning as clearly expressed." *Id.* (quoting *Schroeder v. Dep't of Soc. Servs.*, 1996 S.D. 34, ¶ 9, 545 N.W.2d 223, 227-28).

> When engaging in statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject. When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed.

*Paul Nelson Farm v. S.D. Dep't of Revenue*, 2014 S.D. 31, ¶ 10, 847 N.W.2d 550, 554 (quoting *State v. Hatchett*, 2014 S.D. 13, ¶ 11, 844 N.W.2d 610, 614).

[¶13.] The plain language in SDCL 10-59-19 is clear, certain, and unambiguous. SDCL 10-59-19 provides, "A taxpayer seeking recovery of an allegedly overpaid tax . . . *shall* file a claim for recovery with the secretary, within

*three years* from the date the tax . . . was paid or within three years from the date the return was due, whichever date is earlier." (Emphasis added.) "When 'shall' is the operative verb in a statute, it is given 'obligatory or mandatory' meaning." *Fritz v. Howard Twp.*, 1997 S.D. 122, ¶ 15, 570 N.W.2d 240, 242. *See also* SDCL 2-14-2.1 ("As used in the South Dakota Codified Laws to direct any action, the term, shall, manifests a mandatory directive and does not confer any discretion in carrying out the action so directed.") Thus, SDCL 10-59-19 strictly requires that a claim for a refund of overpaid taxes be filed within three years from the date the tax was paid or the return was due. In addition, the three-year statute of limitations is expressly made applicable to bank franchise tax refund claims: "The provisions of [chapter 10-59] may only apply to proceedings commenced under this chapter concerning the taxes . . . imposed by . . . [chapter] 10-43[.]" SDCL 10-59-1. SDCL chapter 10-43 governs bank franchise taxes. *See* SDCL 10-43-2. Therefore, a plain reading of our law confirms that the three-year statute of limitations imposed under SDCL 10-59-19 applies to bank franchise taxes.[5]

---

5.    Citibank argues that the three-year statute of limitations imposed under SDCL 10-59-19 should not be applied to bank franchise taxes. First, Citibank notes that the Legislature directed the Secretary of the Department in SDCL 10-43-55 to promulgate regulations regarding refunds of bank franchise taxes. Citibank argues that in light of this directive, the Secretary intended to extend the statute of limitations for bank franchise taxes when it promulgated ARSD 64:26:02:06. Citibank further contends, "The bank franchise tax is the only tax levied by the State of South Dakota that is calculated based upon the taxpayer's federal taxable income." Accordingly, Citibank argues that the inclusion of the federal taxable income in determining the bank franchise tax refund justifies not applying the three-year statute of limitations to such claims because "neither the State nor the taxpayer can ensure that IRS adjustments to income are made within three years." But we find no statutory provision that allows a deviation from SDCL

(continued . . .)

[¶14.]     Similarly, the clear, certain, and unambiguous language of ARSD 64:26:02:06 does not support Citibank's argument that ARSD 64:26:02:06 "carves out a limited exception to the three-year limitations period[.]"  Citibank contends, "ARSD 64:26:02:06 does not provide that a taxpayer can claim a refund based on an *anticipated* federal adjustment; to the contrary, it expressly states that a taxpayer may file a supplemental return if a decrease in income 'occurs,' including 'because of audit and adjustment by the United States.'"  Relying on this interpretation, Citibank argues that ARSD 64:26:02:06 therefore allows a taxpayer to file a supplementary return for overpaid bank franchise taxes *after* the decrease in the taxpayer's net or taxable income occurred and *after* the expiration of the three-year limitation period contained in SDCL 10-59-19.  We disagree.

[¶15.]     First, there is no language in SDCL 10-59-19 permitting an exception to the three-year limitation period.[6]  Therefore, by arguing that ARSD 64:26:02:06

_____

(. . . continued)

    10-59-19's three-year statute of limitations for bank franchise taxes.  We will not recognize a limited exception to the three-year statute of limitations for bank franchise taxes that the Legislature has clearly not provided.  "The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used."  *In re Taliaferro*, 2014 S.D. 82, ¶ 6, 856 N.W.2d 805, 806 (quoting *In re Estate of Ricard*, 2014 S.D. 54, ¶ 8, 851 N.W.2d 753, 756).

6.    Citibank points out that "[o]ther states apply their laws relating to assessing deficiencies and claiming refunds based on federal adjustments in a similar fashion to the interpretation advanced by Citibank."  Citibank cites to statutes from nine other states to support this argument—Arkansas, Connecticut, Indiana, Michigan, Minnesota, New Jersey, New Mexico, New York, and Texas.  The statutes cited by Citibank are not similar in language to the statutes in South Dakota.  Thus, this is an argument for the Legislature and not for this Court.  "[Our] only function is to declare the meaning of the statute as clearly expressed."  *Paul Nelson Farm*, 2014 S.D.

(continued . . .)

"carves out an exception" to the limitation period, Citibank necessarily argues that there is a conflict between ARSD 64:26:02:06 and SDCL 10-59-19. "Where statutes appear to be contradictory, it is the duty of the court to reconcile them and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable." *State v. Clements*, 2013 S.D. 43, ¶ 8, 832 N.W.2d 485, 487 (quoting *In re Collins*, 85 S.D. 375, 382, 182 N.W.2d 335, 339 (1970)). We find no conflict between SDCL 10-59-19 and ARSD 64:26:02:06; rather, the two can be read harmoniously. ARSD 64:26:02:06 expressly indicates that it "implement[s] . . . SDCL 10-59-19[.]" "Implement" is defined as "[t]o put into practical effect; carry out[.]" American Heritage Dictionary 646 (2d college ed. 1985). Thus, the regulation was intended to "carry out" the three-year limitation period imposed in SDCL 10-59-19 rather than provide an exception. Moreover, the plain language of ARSD 64:26:02:06 makes clear that the regulation merely establishes the procedural framework for filing a supplementary return for overpaid bank franchise taxes. *See* ARSD 62:26:02:06. That is, the regulation designates generally when a supplementary return may be filed and when it need not be filed. *See id.*

[¶16.] Giving the language in ARSD 64:26:02:06 its plain meaning and effect, *see Paul Nelson Farm*, 2014 S.D. 31, ¶ 10, 847 N.W.2d at 544, we similarly reject Citibank's argument that ARSD 64:26:02:06 does not allow a supplementary return

---

(. . . continued)
31, ¶ 10, 847 N.W.2d at 554 (quoting *Hatchett*, 2014 S.D. 13, ¶ 11, 844 N.W.2d at 614).

to be filed when the decrease in taxable or net income is *anticipated*. Under ARSD 64:26:02:06, a taxpayer "may file a supplementary return" when "a subsequent decrease occurs in the taxpayer's net income or taxable income for that tax year, whether because of audit and adjustment by the United States *or otherwise*[.]" (Emphasis added.) It follows that the inclusion of the "or otherwise" language permits a taxpayer to file a supplementary return prior to the IRS adjustment when the decrease in taxable income is anticipated. Therefore, a taxpayer does not need to wait until completion of the federal audit by the IRS. The only requirement is that Citibank "file a claim for recovery with the secretary" before the expiration of the three-year statute of limitations. *See* SDCL 10-59-19. Presumably, the decrease in Citibank's net income or taxable income for the 1999, 2000, 2001, and 2002 taxable years—for purposes of ARSD 64:26:02:06—*occurred* when Citibank changed its method of accounting for the 2001 tax year.

[¶17.]     Even if we were to recognize that ARSD 64:26:02:06 "carves out a limited exception to the three-year limitations period[,]" that conclusion would serve to expand or supersede the language contained in SDCL 10-59-19. An administrative regulation adopted in contravention of a statute is invalid. *Paul Nelson Farm*, 2014 S.D. 31, ¶ 24, 847 N.W.2d at 558 (quoting *In re Yanni*, 2005 S.D. 59, ¶ 16, 697 N.W.2d 394, 400). Likewise, when a regulation implements a statute, "[t]he rule can in no way expand upon the statute that it purports to implement." *State Div. of Human Rights, ex rel. Ewing v. Prudential Ins. Co. of Am.*, 273 N.W.2d 111, 114 (S.D. 1978). "The power of an administrative officer or board to administer a . . . statute and prescribe rules and regulations to that end is not the power to

make law . . . but the power to adopt regulations to carry into effect the will of [the legislative body] as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." *Dixon v. United States*, 381 U.S. 68, 74, 85 S. Ct. 1301, 1305, 14 L. Ed. 2d 223 (1965) (quoting *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 134, 56 S. Ct. 397, 400, 80 L. Ed. 528 (1936)). Therefore, Citibank's argument—i.e., ARSD 64:26:02:06 eliminates the three-year statute of limitations for refunds of overpaid bank franchise taxes—would, if accepted, violate a fundamental principle of administrative law by effectively expanding or superseding the three-year limitation period in SDCL 10-59-19.

[¶18.] Finally, Citibank contends that ARSD 64:26:02:06 is rendered meaningless by our interpretation that the regulation merely establishes the procedure for obtaining a refund of overpaid bank franchise taxes. Citibank asserts, "SDCL 10-59-17 and SDCL 10-59-19 already provide a mechanism for obtaining a refund for overpayment." Our holding today does not render ARSD 64:26:02:06 meaningless. "[T]here is a presumption against construction of a statute [that] would render it ineffective or meaningless." *Tracfone Wireless, Inc. v. S.D. Dep't of Revenue & Regulation*, 2010 S.D. 6, ¶ 19 n.7, 778 N.W.2d 130, 136 n.7 (quoting *Appeal of Real Estate Tax Exemption for Black Hills Legal Servs., Inc.*, 1997 S.D. 64, ¶ 12, 563 N.W.2d 429, 432). It is axiomatic that SDCL 10-59-19 and ARSD 64:26:02:06 will cover similar subject matter because ARSD 64:26:02:06 "implements" SDCL 10-59-19. But ARSD 64:26:02:06 plainly provides information about obtaining a refund for overpaid bank franchise taxes not available in SDCL

10-59-19. For example, the regulation elaborates on the procedure for filing a refund claim under SDCL 10-59-19. The regulation explains that a claim can be made by "fil[ing] a supplementary return[,]" and that "[a] supplementary return need not be filed if the decrease is the result of an adjustment in the original return by the department"—information notably absent from SDCL 10-59-19. Consequently, we hold that the plain language of SDCL 10-59-19 and ARSD 64:26:02:06 are not contradictory nor does the rule provide an exception to the three-year limitation period for filing a refund for bank franchise taxes.

**B. Statutes of General and Specific Application**

[¶19.] Citibank next argues, "The judgment should . . . be reversed because the specific statutes and rules governing the bank franchise tax apply rather than the general three-year limitations period." According to Citibank, "[t]he Legislature adopted general statutes governing the bank franchise tax in SDCL Ch. 10-43[,]" and "directed the Secretary of the Department to promulgate specific regulations addressing the bank franchise taxes." We have held that "the rules of statutory construction dictate that 'statutes of specific application take precedence over statutes of general application.'" *Schafer v. Deuel Cnty. Bd. of Comm'rs*, 2006 S.D. 106, ¶ 10, 725 N.W.2d 241, 245 (quoting *Coop. Agronomy Servs. v. S.D. Dep't of Revenue*, 2003 S.D. 104, ¶ 19, 668 N.W.2d 718, 723). "We are guided by the principle that a court should construe multiple statutes covering the same subject matter in such a way as to give effect to all of the statutes if possible." *Id.* (quoting *Kinzler v. Nacey*, 296 N.W.2d 725, 728 (S.D. 1980)).

[¶20.] We held above that SDCL 10-59-19 and ARSD 64:26:02:06 are clear, certain, and unambiguous. *See supra* ¶¶ 13-14. "When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Paul Nelson Farm*, 2014 S.D. 31, ¶ 10, 847 N.W.2d at 554 (quoting *Hatchett*, 2014 S.D. 13, ¶ 11, 844 N.W.2d at 614). Thus, we need not engage in canons of statutory construction to determine the meaning of the regulation. Moreover, Citibank cites to no authority supporting the rule of construction that a specific *regulation* takes precedence over a general *statute.* Instead, Citibank cites only to cases where we have acknowledged that a statute of specific application takes precedence over a statute of general application. *See Tracfone Wireless*, 2010 S.D. 6, ¶ 14, 778 N.W.2d at 134; *Schafer*, 2006 S.D. 106, ¶ 10, 725 N.W.2d at 245; *Pourier v. S.D. Dep't of Revenue* (*Pourier II*), 2004 S.D. 3, ¶ 4, 674 N.W.2d 314, 316; *Moore*, 1999 S.D. 152, ¶ 16, 603 N.W.2d at 518. Nor are we persuaded by Citibank's argument that the fact that "[a]dministrative regulations are subject to the same rules of construction as are statutes," *Westmed Rehab*, 2004 S.D. 104, ¶ 8, 687 N.W.2d at 518, means that regulations of specific application take precedence over statutes of general application.

[¶21.] Furthermore, we addressed the canon of statutory construction that statutes of specific application take precedence over statutes of general application in *Ernst & Young*, 2004 S.D. 122, 689 N.W.2d 449. The facts of *Ernst & Young* are similar to the present facts. There, this Court addressed whether the three-year statute of limitations in SDCL 10-59-19 applied, or whether SDCL 10-45-29—which

allows deductions for sales tax previously paid when a refund is made—applied to Ernst & Young's refund claim. *Ernst & Young*, 2004 S.D. 122, ¶¶ 15-16, 689 N.W.2d at 453-54. Ernst & Young argued that SDCL 10-45-29 is more specific than the general provision of SDCL 10-59-19. *Id.* However, this Court held that because "SDCL 10-45-29 does not specify a limitations period other than the reporting period, it is subject to the three year limitation for overpaid taxes contained in SDCL 10-59-19." *Id.* ¶ 16, 689 N.W.2d at 454. Therefore, a statute that does not provide a limitation period, but merely addresses other procedural aspects, cannot be said to be the more specific statute than one that establishes a statute of limitations. *See id.* Likewise, Citibank's claim that ARSD 64:26:02:06 is the more specific pronouncement on the statute of limitations for bank franchise taxes rather than SDCL 10-59-19 is without merit.

### C. Written Advice

[¶22.]        Citibank alleges that ARSD 64:26:02:06 constitutes "written advice" and that by citing the three-year statute of limitations in SDCL 10-59-19 to deny Citibank's refund claim, the Department is taking a position contrary to the written advice it provided in ARSD 64:26:02:06. Citibank argues, "If a taxpayer may rely on the Department's written advice, the same applies to the regulations, which have the force of law, and which were promulgated by the Department more than two decades ago." SDCL 10-59-27 provides, "Any taxpayer who has received written advice from the Department of Revenue concerning the taxability of transactions shall be allowed to rely on such advice when filing tax returns." Certainly, a taxpayer is allowed to rely on the written advice of the Department "concerning the

taxability of transactions." But Citibank advances no authority to support the broad assertion that a regulation promulgated by the Department constitutes "written advice." Regardless, we held above that SDCL 10-59-19 and ARSD 64:26:02:06 are harmonious and workable. *See supra* ¶ 15. ARSD 64:26:02:06 does not eliminate the three-year statute of limitations found in SDCL 10-59-19. Therefore, even if we entertained the notion that the regulation constitutes "written advice" by the Department, the Department certainly was not "taking a position contrary" to the regulation when it denied the refund claim.

### D. Statute of Limitations for *Increase* in Taxable Income

[¶23.]      Citibank contends that ARSD 64:26:02:05—a regulation addressing the procedure for filing a supplemental return when there has been an *increase* in taxable income—allows a taxpayer to file an amended return when there has been an increase in taxable income "without regard to the timing of the adjustment."[7] Therefore, Citibank asserts, "The regulation concerning the assessment of deficiencies of bank franchise taxes based on federal adjustments, ARSD 64:26:02:05, is nearly identical to the corollary rule relating to refunds, ARSD

---

7.      ARSD 64:26:02:05 provides:

> When the taxpayer has filed a return with the department for the tax year and a subsequent increase occurs in the taxpayer's net income or taxable income for that tax year, whether because of audit and adjustment by the United States or otherwise, the taxpayer shall file a supplementary return with the department for the tax year in which the income was earned. The return must be filed within 60 days after the final determination of the increase in income. A supplementary return need not be filed if the increase in the taxpayer's income is the result of an adjustment in the original return by the department.

64:26:02:06. Both regulations were adopted at the same time, touch on the same subject matter, and use nearly identical language. They must, therefore, be read consistently." According to Citibank, "These regulations taken together . . . preclude the pursuit of a refund claim or deficiency assessment prior to the conclusion of the federal audit, and allow for such actions when the federal adjustment is finalized outside the general three-year limitations period." Essentially, Citibank contends that the two regulations, when read harmoniously, indefinitely extend the three-year statute of limitations contained in SDCL 10-59-19.[8]

[¶24.] The Department points out, however, that much like ARSD 64:26:02:06, ARSD 64:26:02:05 is merely a procedural rule. The Department therefore contends that the rule does not eliminate the three-year statute of limitations in SDCL 10-59-19 when there is an increase in the taxpayer's income that causes the taxpayer to owe more to the State. The interpretation of ARSD 64:26:02:05, however, is not properly before this Court. Accordingly, we decline to interpret the effect, if any, that ARSD 64:26:02:05 has on the three-year statute of limitations contained in SDCL 10-59-19.

---

8. Citibank bases this argument on an unrelated occasion in 2007 where it filed an amended bank franchise tax return for the tax years 1993 through 1998 and consequently paid additional taxes. The Department did not object to the unsolicited payment as being outside the three-year statute of limitations and accepted payment. Accordingly, Citibank argues that this is evidence that the statute of limitations imposed in SDCL 10-59-19 does not apply to their unsolicited payment nor should it apply to the facts of the present case. Therefore, Citibank's argues its refund claim in the present case was timely.

### E. Catch-22

[¶25.]        Citibank claims that the refund should be allowed because audits of large corporations are often not resolved within three years.  Thus, Citibank argues that the three-year statute of limitations produces a "catch-22"[9] because "there can be no refund claim absent a final federal adjustment, but in virtually every case involving large banks, any refund claim brought after a final federal adjustment will be untimely."  Citibank further contends, "That result is not only unfair, but would effectively mean that a financial institution's bank franchise tax will *not* be based on its *actual* federal taxable income, which is contrary to the requirements of SDCL 10-43-10.1."  We disagree.  We held above that the three-year statute of limitations imposed in SDCL 10-59-19 does not preclude Citibank from preserving a future refund before the statute of limitations expires.  *See supra* ¶ 16.  Therefore, it matters little that "audits of large corporations are often not *resolved* within three years" as Citibank contends because a taxpayer may file a supplementary return before the audit is resolved.  (Emphasis added.)  Here, Citibank was aware of the double reporting of fees when it changed its accounting method beginning with the 2001 tax year.  Citibank certainly could have filed a supplementary return at that time.  Instead, Citibank waited until after the expiration of the three-year statute of limitations to file an amended return with the Department.

---

9.        "Catch-22," a term originating from the 1961 novel of the same name by Joseph Heller, is defined as "a problematic situation for which the only solution is denied by a circumstance inherent in the problem or by the rule." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/catch-22 (last visited July 27, 2015).

[¶26.] Nevertheless, Citibank argues that in a matter separate from the present claim, the Department refused Citibank's attempt to file a timely refund claim in 2012 for the 2008 tax year. Citibank filed the refund claim and supplemental tax return for the 2008 tax year before the three-year statute of limitations expired. According to Citibank, the Department denied the refund claim because the claim did not contain closing documents from the federal audit. The Department's letter that allegedly rejected the claim explained: "In order to verify the federal adjustment for the year at issue, this office requires copies of closing documents from the federal audit."

[¶27.] The Department responds that it indicated to Citibank in a letter dated April 12, 2013, that the claim would be processed upon receipt of the closing documents. At the circuit court hearing, the Department confirmed that it would process that refund claim upon receipt of the closing documents. The Department further acknowledges that Citibank's refund claim for the 2008 tax year—filed within the three-year statute of limitations under SDCL 10-59-19—satisfied the purpose of the limitation period by providing the State with notice of the potential refund. Consequently, we reject Citibank's argument that the facts of this case cause them to be in an impossible position or "catch-22."

### F. Constitutionality

[¶28.] Finally, Citibank argues that the Department's interpretation and application of SDCL 10-59-19 raises significant constitutional concerns. Citibank erroneously concludes, however, that the application of the three-year statute of limitations in this case denies Citibank its constitutional due process rights.

Citibank contends that it did not have a meaningful opportunity to obtain a refund for the overpaid tax. But, as explained above, Citibank could have filed a supplementary return with the Department within the three-year limitation period. In fact, before the SDCL 10-59-19 statute of limitations expired, Citibank cooperated with the IRS to extend the federal statute of limitations for auditing the Federal Tax Returns. Clearly, Citibank was provided a meaningful opportunity to preserve its refund claim with the Department within the three-year statute of limitations period imposed by SDCL 10-59-19.

[¶29.] We have recognized that certain equitable concerns justify the short three-year statute of limitations for tax refund claims:

> [T]he United States Supreme Court has specifically authorized reasonable procedural limitations, including "relatively short statutes of limitations applicable to tax refund claims." *McKesson Corp. v. Div. of Alcoholic Beverages*, 496 U.S. 18, 45, 110 S. Ct. 2238, [2254,] 110 L. Ed. 2d 17 (1990). The Supreme Court acknowledged this vital issue in dealing with tax refunds, endorsing a State's "exceedingly strong interest in financial stability." *Id.* at 37, 110 S. Ct. [at 2250]. Granted, there is an element of injustice in cutting off the right to seek tax refunds for taxes illegally collected. But statutes of limitations always cut off what may otherwise be just claims. They balance the right to redress against the specter of endless liability. In tax refund cases, to deny such limitations would devastate the State's budgetary planning process.

*Pourier I*, 2003 S.D. 21, ¶ 54, 658 N.W.2d at 410 (Konenkamp, J., concurring in part and dissenting in part) (majority opinion vacated in part on rehearing by *Pourier II*, 2004 S.D. 3, 674 N.W.2d 314). Upholding the three-year statute of limitations aligns with "the need to protect the government's strong interest in financial stability and the State's ability to engage in sound fiscal planning as the strong underlying justification for limitations periods for tax refunds." *Ernst & Young*,

2004 S.D. 122, ¶ 17, 689 N.W.2d at 454 (quoting *Pourier I*, 2003 S.D. 21, ¶ 38, 658 N.W.2d at 407) (internal quotation marks omitted). As the United States Supreme Court acknowledged:

> It probably would be all but intolerable . . . to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

*Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 301, 67 S. Ct. 271, 273, 91 L. Ed. 296 (1946).

[¶30.]   **2.   Whether the circuit court erred as a matter of law in rejecting Citibank's equitable tolling argument.**

[¶31.]   Because we have concluded that SDCL 10-59-19 applies in this case and that Citibank failed to comply with its provisions, we now address Citibank's request for equitable tolling of the three-year statute of limitations. "If legally authorized, the harsh effect of a statute of limitations can be judicially modified in limited circumstances through the application of the doctrine of equitable tolling." *Anson v. Star Brite Inn Motel*, 2010 S.D. 73, ¶ 15, 788 N.W.2d 822, 825-26 (footnote omitted).[10] Citibank asked that this case be remanded to either the circuit court or

---

10.   In *Anson*, we acknowledged that there is a question as to "whether equitable tolling as a legal doctrine is recognized in civil actions in South Dakota." 2010 S.D. 73, ¶ 15 n.2, 788 N.W.2d at 825 n.2. We further recognized that "a very compelling argument can be made that equitable tolling cannot be recognized as a legal doctrine in South Dakota." *Id.* But, for purposes of the appeal in *Anson*, "we assume[d], without deciding, that equitable tolling can apply as a legal doctrine and proceed to the issue before us—its factual application to this case. As we affirm based upon the facts, the legal issue of

(continued . . .)

OHE for consideration of this issue. Citibank argues, "After the oral argument in this matter, a material event occurred affecting the application of [Citibank's] equitable tolling argument." The Department "denied another refund request for tax years 2009 and 2010 even though the Department was aware of the pending [IRS] audit."[11] Thus, Citibank requests that we enter an order remanding to either the circuit court or OHE because the Department's "conduct affects the equitable tolling arguments." Specifically, Citibank requests "an order remanding this case, ordering that the newly acquired evidence be included in the record, and ordering that the consideration of Citibank's equitable tolling argument in light of this newly

_____

(. . . continued)

the potential application of equitable tolling does not become dispositive." *Id.* Likewise, because we hold today that the three-year statute of limitations is jurisdictional, "the legal issue of the potential application of equitable tolling does not become dispositive." *See id.*

11.   Citibank filed a 2010 bank franchise tax return on September 30, 2011. Pursuant to the three-year statute of limitations, Citibank had until September 30, 2014 to file a refund request for the 2010 tax year. Citibank filed a refund request with the Department for tax year 2010 on November 17, 2014. In February 2013, Citibank and the State had negotiated the amount owed by Citibank on bank franchise tax amounts for the tax years 2009 through 2012. According to Citibank, it "did not know the effect of the audit on Citibank's federal income tax, and correspondingly, on its South Dakota bank franchise tax." Citibank expected that the audit would result in a $5,000,000 deficiency for the 2010 tax year and, as a result, that it would have to remit bank franchise tax payments. According to Citibank, it "could not file a supplementary return within the expiration of the three-year limitations period because the amount of its bank franchise tax was unknown and could increase or decrease as a result of the pending audit by the IRS." Citibank argues that the Department had personal knowledge of the IRS's audit of the 2009 and 2010 tax years because of communications that occurred during the negotiations. Citibank mentioned the IRS audit in both an email and a letter to the Department. Citibank did not, however, file a supplementary return with the Department for the 2009 and 2010 tax years within the three-year statute of limitations under SDCL 10-59-19.

acquired evidence and this Court's decision be held in abeyance subject to the completion of the proceedings ordered on remand."

[¶32.] The Department urges us to deny Citibank's motion to remand for three reasons. First, the Department contends that "SDCL 10-59-17 precludes the application of equitable tolling in this case and therefore, a remand to consider additional evidence relating to that argument would be futile." Second, the newly discovered evidence is "immaterial to this case." Third, "Citibank has waived an equitable tolling argument[.]"

[¶33.] We review questions of law "de novo with no deference given to the conclusions of law of the circuit court." *Dakota Truck Underwriters*, 2004 S.D. 120, ¶ 15, 689 N.W.2d at 201 (quoting *Homestake Mining Co. v. S.D. Subsequent Injury Fraud*, 2002 S.D. 46, ¶ 12, 644 N.W.2d 612, 616). "Where relevant facts are undisputed and the district court denied equitable tolling as a matter of law, we review the district court's decision de novo." *Id.* ¶ 16 (quoting *Rouse v. Lee*, 339 F.3d 238, 247 (4th Cir. 2003)). Moreover, "when the facts are undisputed, as they are here, we will apply a de novo standard of review to the applicability of equitable tolling." *Anson*, 2010 S.D. 73, ¶ 13, 788 N.W.2d at 825 (quoting *Dakota Truck Underwriters*, 2004 S.D. 120, ¶ 16, 689 N.W.2d at 201).

[¶34.] The United States Supreme Court decision *United States v. Kwai Fun Wong*, ___ U.S. ___, 135 S. Ct. 1625, 191 L. Ed. 2d 533 (2015), is instructive on this

issue.[12]  In *Kwai Fun Wong*, the Supreme Court recognized the existence of a

"'rebuttable presumption of equitable tolling' [in] suits brought against the United

States under a statute waiving sovereign immunity." ___ U.S. at ___, 135 S. Ct. at

1631 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96, 111 S. Ct. 453,

457, 112 L. Ed. 2d 435 (1990)).  The Government may rebut the presumption of

equitable tolling by establishing, "through evidence relating to a particular statute

of limitations, that Congress opted to forbid equitable tolling." *Id.* "One way to

meet that burden . . . is to show that Congress made the time bar at issue

jurisdictional." *Id.* If the time bar for a suit is jurisdictional, "a litigant's failure to

comply with the bar deprives a court of all authority to hear a case." *Id.* This

means that a court must enforce the limitation "even if equitable considerations

would support extending the prescribed time period." *Id.* (citing *John R. Sand &

Gravel Co. v. United States*, 552 U.S. 130, 133-34, 128 S. Ct. 750, 753-54, 169 L. Ed.

2d 591 (2008)).

[¶35.]     The Government, however, must overcome "a high bar to establish that

a statute of limitations is jurisdictional." *Id.* at ___, 135 S. Ct. at 1632.  Congress

must "clearly state" that the time bar is jurisdictional. *Id.* "Absent such a clear

statement, 'courts should treat the restriction as nonjurisdictional.'" *Id.* (quoting

*Sebelius v. Auburn Reg'l Med. Ctr.*, ___ U.S. ___, ___, 133 S. Ct. 817, 824, 184 L. Ed.

2d 627 (2013)).  Congress need not "incant magical words." *Id.* (quoting *Auburn*

---

12.    The United States Supreme Court decided *Kwai Fun Wong* after oral
       argument was completed in this case.  The parties submitted supplementary
       briefs regarding the applicability of *Kwai Fun Wong* to this case.

*Reg'l*, ___ U.S. at ___, 133 S. Ct. at 824). Instead, "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.* That is, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.*

[¶36.]     Here, Citibank failed to comply with the three-year statute of limitations for the "recovery of an allegedly overpaid tax, penalty, or interest" as provided in SDCL 10-59-19. Under the equitable tolling framework established in *Kwai Fun Wong*, there is a "'rebuttable presumption of equitable tolling' [in] statutes brought against the [State] *under a statute waiving sovereign immunity*." ___ U.S. at ___, 135 S. Ct. at 1631 (emphasis added) (quoting *Irwin*, 498 U.S. at 95-96, 111 S. Ct. at 457).[13] We must first determine whether SDCL 10-59-17 waives the sovereign immunity of the State. The law of this State is clear that "without specific 'constitutional or statutory authority, an action cannot be maintained against the State.'" *Pourier v. S.D. Dep't of Revenue & Regulation* (*Pourier III*),

---

13.     There is a distinction to be drawn between this case and *Kwai Fun Wong*. Unlike the federal system where Congress may define the jurisdiction of district courts, *see* U.S. Const. art. I, § 8, cl. 9; U.S. Const. art. III, § 1; U.S. Const. art. III, § 2, cl. 2, the South Dakota Constitution grants circuit courts "original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature[,]" S.D. Const. art. V, § 5. However, the South Dakota Constitution grants the Legislature authority to place limitations on when an action may be brought against the State. S.D. Const. art. III, § 27. *See also Pourier v. S.D. Dep't of Revenue & Regulation* (*Pourier III*), 2010 S.D. 10, ¶ 14, 778 N.W.2d 602, 606 (quoting *Lick v. Dahl*, 285 N.W.2d 594, 599 (S.D. 1979)). The Legislature may restrict when an action may be brought against the State by classifying the statute as jurisdictional.

2010 S.D. 10, ¶ 14, 778 N.W.2d 602, 606 (quoting *Lick v. Dahl*, 285 N.W.2d 594, 599 (S.D. 1979)). "It is a 'well established principle that statutes of limitation applicable to suits or claims against the government are conditions attached to the sovereign's consent to be sued and must be strictly construed.'" *Dakota Truck Underwriters*, 2004 S.D. 120, ¶ 42, 689 N.W.2d at 205 (Gilbertson, C.J., dissenting) (quoting *Kreiger v. United States*, 539 F.2d 317, 320 (3d Cir. 1976)). In *Pourier III*, we recognized that SDCL 10-59-17 provides a limited waiver of sovereign immunity: "[T]he extent of the waiver of sovereign immunity is limited to the express language of SDCL 10-59-17." 2010 S.D. 10, ¶ 14, 778 N.W.2d at 606 ("A *taxpayer* seeking recovery of tax . . . shall follow the procedure established in this chapter." (quoting SDCL 10-59-17)). Therefore, the State waived sovereign immunity in this case only to the extent that Citibank followed the procedure established under SDCL chapter 10-59.

[¶37.]     The next step in the analysis is whether the three-year statute of limitations is jurisdictional. The Department argues that the "South Dakota Legislature clearly indicated that the statute of limitations in SDCL 10-59-19 is jurisdictional." We agree. SDCL 10-59-17 provides:

> A taxpayer seeking recovery of tax, penalty, or interest imposed by the chapters set out in § 10-59-1 shall follow the procedure established in this chapter. *No court has jurisdiction of a suit to recover such taxes, penalty, or interest unless the taxpayer seeking the recovery of tax complies with the provisions of this chapter.*

(Emphasis added.) Clearly, the Legislature "imbued a procedural bar with jurisdictional consequences" when it enacted this statute. SDCL 10-59-17 plainly states that "[n]o court has jurisdiction" over an action to recover taxes if the

-27-

taxpayer does not comply with the provisions of SDCL chapter 10-59. The three-year statute of limitations for the recovery of taxes contained in SDCL 10-59-19 is within the provisions of SDCL chapter 10-59. "[L]egislatures may preclude equitable tolling by expressing an intention 'to disallow tolling under any circumstances not enumerated in the statute.'" *Anson,* 2010 S.D. 73, ¶ 37, 788 N.W.2d at 831 (Konenkamp, J., concurring) (quoting *Laird v. Blacker,* 828 P.2d 691, 698 (Cal. 1992) (en banc)).

[¶38.]     Citibank disagrees that the Legislature "express[ed] a clear intent to make the limitations period a jurisdictional defect."[14]  Citibank cites *Kwai Fun*

---

14.     Citibank argues that we need not determine whether the three-year statute of limitations is jurisdictional because this Court may apply equitable tolling even when a statute is jurisdictional.  Citibank cites to *Dakota Truck Underwriters,* 2004 S.D. 120, ¶¶ 19-31, 689 N.W.2d at 202-04, for this proposition.  In *Dakota Truck Underwriters,* we noted that "the making or filing of a claim within the required time is jurisdictional . . . being an essential element of the right to compensation[;]" furthermore, "[w]here the making or filing of a timely claim is jurisdictional it cannot be waived or avoided on equitable grounds such as by a waiver or an estoppel."  2004 S.D. 120, ¶ 21, 689 N.W.2d at 202 (quoting *Klein v. Menke,* 83 S.D. 511, 517, 162 N.W.2d 219, 222 (1968)) (internal quotation marks omitted).  We nonetheless applied equitable tolling because although the insurer acted diligently, it got "caught in an arcane procedural snare."  *Id.* ¶ 20 (quoting *Warren v. Dep't of Army,* 867 F.2d 1156, 1160 (8th Cir. 1989)).  Relying on *Dakota Truck Underwriters,* Citibank argues that even if we conclude that the three-year statute of limitations contained in SDCL 10-59-19 is jurisdictional, we should nevertheless apply equitable tolling to its refund claim.  We disagree.  Today we apply the jurisdictional framework for equitable tolling claims against the State established in *Kwai Fun Wong,* ___ U.S. ___, 135 S. Ct. 1625, 191 L. Ed. 2d 533.  In *Dakota Truck Underwriters,* we did not engage in any analysis to determine whether the Legislature intended the statute of limitations at issue in that case to be jurisdictional.  *See Kwai Fun Wong,* ___ U.S. at ___, 135 S. Ct. at 1631 (stating that the Government may rebut the presumption of equitable tolling by establishing "through evidence relating to a particular statute of limitations, that Congress opted to forbid equitable tolling").  We

(continued . . .)

*Wong* to support its contention that SDCL 10-59-19 is nonjurisdictional. In *Kwai Fun Wong*, the Supreme Court considered a statute that provided in part, "A tort claim against the United States shall be *forever barred* unless it is presented to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . ." ___ U.S. at ___, 135 S. Ct. at 1639 (emphasis added) (quoting 28 U.S.C. § 2401(b) (2012)). The Supreme Court held that the phrase "forever barred" spoke "only to a claim's timeliness, not to a court's power." *Id.* at ___, 135 S. Ct. at 1632. Specifically, the court held that "[the statute] does not define a federal court's jurisdiction over tort claims generally, address its authority to hear untimely suits, or in any way cabin its usual equitable powers." *Id.* at ___, 135 S. Ct. at 1633. Rather, the statute "'reads like an ordinary, run-of-the-mill statute of limitations,' spelling out a litigant's filing obligations without restricting a court's authority." *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 647, 130 S. Ct. 2549, 2561, 177 L. Ed. 2d 130 (2010)). Therefore, the Supreme Court held that the statute was nonjurisdictional.

[¶39.]    Citibank contends that the language in SDCL 10-59-19 is similar to the language of the statute of limitations considered in *Kwai Fun Wong*. *See* SDCL 10-59-19 ("A claim for recovery not filed within three years of the date the tax was paid or within three years of the date the return was due, whichever date is earlier, *is barred*." (emphasis added)). According to Citibank, "SDCL 10-59-19 employs

_____

(. . . continued)
        therefore reject Citibank's proposition that we should apply the elements of
        equitable tolling to this case.

classic statute of limitations language[.]" As a result, the "Legislature's use of generic statute of limitations language means equitable tolling can be applied to the limitations period in SDCL 10-59-19." Certainly, the language in SDCL 10-59-19, when viewed in isolation, is similar to language from the statute in *Kwai Fun Wong*. But SDCL 10-59-19 must be viewed in conjunction with SDCL 10-59-17. "SDCL 10-59-17 and SDCL 10-59-19 touch upon the same subject matter, the recovery of taxes, and are presumed to have been intended to coexist[.]" *Ernst & Young*, 2004 S.D. 122, ¶ 9, 689 N.W.2d at 452. Therefore, SDCL 10-59-19 is distinguishable from the nonjurisdictional statute of limitations considered in *Kwai Fun Wong*. Here, SDCL 10-59-17 does not merely speak to "the claim's timeliness[;]" rather, the statute speaks directly to the "court's power" by stating that "[n]o court has jurisdiction . . . unless the taxpayer . . . complies with the provisions of this chapter."

[¶40.]     Citibank responds that because "the jurisdictional defect language from SDCL 10-59-17 is not included in . . . SDCL 10-59-19[,] . . . the Legislature did not express a clear intent to make the limitations period a jurisdictional defect." We disagree. This argument would render meaningless the express language in SDCL 10-59-17 that "[n]o court has jurisdiction of a suit to recover such taxes . . . unless the taxpayer seeking the recovery of tax complies with the provisions of this chapter." Citibank would have us hold that the Legislature must repeat the jurisdictional language from SDCL 10-59-17 in SDCL 10-59-19 in order for it to apply to the three-year statute of limitations. This interpretation of the two statutes does not comport with our traditional tools of statutory construction. *See*

*Paul Nelson Farm*, 2014 S.D. 31, ¶ 10, 847 N.W.2d at 554 (quoting *Hatchett*, 2014 S.D. 13, ¶ 11, 844 N.W.2d at 614). "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16, 126 S. Ct. 1235, 1245, 163 L. Ed. 2d 1097 (2006) (footnote omitted). In this case, the Legislature clearly stated in SDCL 10-59-17—a statute waiving sovereign immunity for recovery of overpaid tax—that the three-year statute of limitations contained in SDCL 10-59-19 is jurisdictional.

[¶41.]     Finally, Citibank argues that "when equitable tolling applies, the taxpayer actually satisfies SDCL 10-59-19, and SDCL 10-59-17 does not divest courts of jurisdiction." This circular reasoning confuses the equitable tolling framework established in *Kwai Fun Wong*. Under *Kwai Fun Wong*, we do not reach the issue of whether Citibank satisfied the elements of equitable tolling until after determining whether the three-year statute of limitations is jurisdictional. The three-year statute of limitations imposed under SDCL 10-59-19 is jurisdictional. Therefore, equitable tolling is not available to Citibank. Consequently, we reject Citibank's argument that it complied with both SDCL 10-59-17 and SDCL 10-59-19. The circuit court did not err by enforcing the three-year statute of limitations against Citibank "even if equitable consideration would support extending the prescribed time period." *See Kwai Fun Wong*, ___ U.S. at ___, 135 S. Ct. at 1631. Based on the foregoing and in consideration of the supplementary briefs submitted to this Court, we deny Citibank's request for remand.

[¶42.]   **3.   Whether the circuit court erred as a matter of law in affirming the denial of Citibank's motion for summary judgment.**

[¶43.]   The three-year statute of limitations found in SDCL 10-59-19 applies to Citibank's request for a refund of bank franchise taxes. Therefore, we do not reach the issue of whether the circuit court erred as a matter of law in affirming the denial of Citibank's motion for summary judgment.

## CONCLUSION

[¶44.]   The circuit court did not err when it affirmed OHE's dismissal of this action for lack of jurisdiction. Statutory construction confirms that SDCL 10-59-19 is applicable to bank franchise tax refund claims. Moreover, ARSD 64:26:02:06 does not carve out an exception to the three-year statute of limitations nor does it expand or supersede SDCL 10-59-19. Instead, ARSD 64:26:02:06 merely implements SDCL 10-59-19. Therefore, Citibank's March 2012 amended return for bank franchise taxes was time-barred by SDCL 10-59-19. Furthermore, equitable tolling is not available to Citibank in this case. The Department satisfied its burden in establishing that the three-year statute of limitations contained in SDCL 10-59-19 is jurisdictional. *See Kwai Fun Wong*, ___ U.S. at ___, 135 S. Ct. at 1631 (quoting *Irwin*, 498 U.S. at 95-96, 111 S. Ct. at 457). The Legislature opted to forbid equitable tolling of the three-year statute of limitations for bank franchise tax refund claims when it enacted SDCL 10-59-17.

[¶45.]   GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and KONENKAMP, Retired Justice, concur.

#26933

[¶46.]     KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.